# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-KA-00304-SCT

*ZENAS TILLIS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/21/2009 |
| TRIAL JUDGE: | HON. VERNON R. COTTEN |
| COURT FROM WHICH APPEALED: | LEAKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EDMUND J. PHILLIPS, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | MARK SHELDON DUNCAN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/16/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., RANDOLPH AND CHANDLER, JJ.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     Zenas Tillis, an inmate at Walnut Grove Youth Correctional Facility ("Walnut Grove"), was indicted for the simple assault of Kathy Hogue, a nurse who worked at Walnut Grove, under the enhanced sentencing provisions of Mississippi Code Sections 47-4-1 and 97-3-7. Following a jury trial in the Circuit Court of Leake County, Mississippi, Tillis was found guilty as charged and sentenced to "five years in the custody of the Mississippi Department of Corrections [("MDOC")] . . . , to run consecutive to any sentence [Tillis] is

presently serving."[1]  On appeal, Tillis contends that "the evidence did not meet the statutory or indictment requirements of the crime charged . . . ."

**FACTS**

¶2.     On February 8, 2008, Hogue was delivering medication to inmates, escorted by Captain James Lewis.  Upon reaching Tillis, Hogue reached into his cell to provide Tillis an inhaler.  Hogue testified that "[h]e grabbed my hand and pulled my arm all the way inside the cell through th[e] food flap, where my entire [left] arm . . . was inside the flap[,]" and "he had a hold of my [left] wrist with one hand, my ring finger, specifically, with another hand, twisting, trying to take my rings off of my finger."  Captain Lewis was able to force Tillis to release Hogue's hand, but her finger soon became swollen to "probably three times its normal size."[2]  Hogue suffered a spiral fracture of her ring finger, which was splinted for two weeks and placed in a cast for six additional weeks.

¶3.     On July 1, 2008, Tillis was indicted for "simple assault of [an] employee of a private correctional facility."  The indictment specifically stated that Tillis:

> did willfully, unlawfully, *feloniously*, purposely and knowingly cause bodily injury to [Hogue], *an employee of [Walnut Grove], a private correctional facility*, by grabbing and twisting the hand and fingers of [Hogue], at a time when [Hogue] was acting within the scope of her employment with [Walnut Grove], *contrary to and in violation of Section 47-4-1 and Section 97-3-7 . . . .*

(Emphasis added.)

---

[1]Tillis had been incarcerated at Walnut Grove since 2005.  Following his conviction for grand larceny, he was given an eight-year sentence.

[2]A bolt-cutter-type device was used by the fire department to remove her rings.

¶4.    On January 21, 2009, a jury trial commenced.  At trial, Hogue testified that she was "employed actually for a contract company called Health Assurance."  According to Hogue, "I work [at Walnut Grove], *I'm employed there*, but I do not work for Walnut Grove.  I work for a medical company that provides medical care for residents at Walnut Grove."  (Emphasis added.)   Hogue added that her work duties were conducted only at Walnut Grove and that on the date of the attack, she was so employed.  Captain Lewis testified that Hogue has an office at Walnut Grove, i.e., the nurse's station.

¶5.    After the State rested, Tillis moved for a directed verdict, arguing that "because [Hogue's] status as an employee is one of the necessary elements of the case, the State cannot make their case out and have not . . . ."  According to counsel for Tillis:

> Hogue is not an employee of a private correctional facility.  She is a contract employee . . . of another corporation . . . , the same as Central Electric provides power to the correctional facility by contract.  Their employees would not be entitled to this.  Whoever did the plumbing work for the correctional facility wouldn't be entitled to that protection under [Mississippi Code Section 47-4-1].

The State responded that "while [Walnut Grove] might not write her paycheck[,]" that is "the only place that she works. . . .  She's there every day."  The State maintained that Hogue was "a de facto employee of [Walnut Grove] . . . ."  Ultimately, the circuit court overruled Tillis's motion for directed verdict, concluding that:

> [r]ight or wrong, I'm going to take the broad view.  I think the statute is not so wooden that it would not anticipate something like this.  I think, as far as the interpretation . . . that ostensibly it could be broadly interpreted that [Hogue], in this setting, and under these circumstances, would qualify as being a person who would fit the term of employee.

3

¶6. After Tillis rested, Jury Instruction S-1, which contained all of the elements of the crime for which Tillis was indicted, was granted by the circuit court for the jury's determination. Jury Instruction S-1 provided:

> [t]he court instructs the jury that if you believe from the evidence in this case beyond a reasonable doubt that at the time and place charged in the indictment and testified about, that [Tillis] did willfully, unlawfully, *feloniously*, purposely and knowingly cause bodily injury to [Hogue], *an employee of [Walnut Grove], a private correctional facility*, by grabbing and twisting the hand and fingers of [Hogue], at a time when [Hogue] was acting within the scope of her employment with [Walnut Grove], then it is your duty to find [Tillis] guilty as charged.[3]

(Emphasis added.) Subsequently, the jury found Tillis guilty as charged, and the circuit court sentenced him to the maximum of "five years in the custody of the [MDOC] . . . . Said sentence is to run consecutive to any sentence [Tillis] is presently serving."

¶7. Tillis then filed a "Motion for New Trial," arguing, *inter alia*, that:

> 2. The Court erred in refusing to grant a peremptory instruction for [Tillis] and further erred in refusing to direct a verdict for [Tillis] at the conclusion of the State's case.

> 3. The Court erred in refusing to grant a directed verdict, as the [S]tate wholly failed to prove an element of their indictment, namely that [Hogue] was an employee of a private correctional facility, according to the statute. Her testimony was that she was not an employee of a private correctional facility, but was an employee of another company that does contract work with a private facility.

---

[3]Regarding Jury Instruction S-1, counsel for Tillis stated, "[n]o objection . . . but I am confused. They are requesting the jury to determine if she is an employee of [Walnut Grove] . . . ." The dissent opines that the circuit court peremptorily instructed the jury on Hogue's employment status, which is inconsistent with defense counsel's acknowledgment that the State was requesting the jury to determine her employment status. As Tillis did not raise the issue addressed by the dissent, neither shall we. *See Glover v. Jackson State Univ.*, 755 So. 2d 395, 398 n.1 (Miss. 2000) ("this Court has long held that issues not raised on appeal are procedurally barred from consideration.").

4

The circuit court entered an "Order Overruling Motion for New Trial." Tillis filed timely notice of appeal.

## ISSUE

¶8.     This Court will consider:

> Whether the evidence met the statutory or indictment requirements of the crime charged.

## ANALYSIS

¶9.     Underlying Tillis's challenge to the denial of his motion for directed verdict, request for peremptory instruction, and motion for new trial is a challenge to the circuit court's interpretation of Mississippi Code Section 47-4-1(4). Specifically, Tillis asserts that the State failed to prove that Hogue was "an employee of a private correctional facility[,]" a requisite element for conviction. *See* Miss. Code Ann. § 47-4-1(4) (Rev. 2004). This Court reviews the interpretation of statutes *de novo*. *See* **Gilmer v. State**, 955 So. 2d 829, 833 (Miss. 2007). In statutory interpretation:

> [t]he first question . . . is whether the statute is ambiguous. When a statute is unambiguous, this Court applies the plain meaning of the statute and refrains from the use of statutory construction princip[les]. The [C]ourt may not enlarge or restrict a statute where the meaning of the statute is clear. In interpreting statutes, this Court's primary objective is to employ that interpretation which best suits the legislature's true intent or meaning.

*Id*. (citations omitted). After determining the proper interpretation of Mississippi Code Section 47-4-1(4), this Court will consider whether the circuit court improperly denied Tillis's motion for directed verdict, request for peremptory instruction, and motion for new trial.

¶10. Mississippi Code Section 97-3-7(1) provides that, generally, an individual convicted of simple assault "shall be punished by a fine of not more than Five Hundred Dollars ($500.00) *or by imprisonment in the county jail for not more than six (6) months*, or both." Miss. Code Ann. § 97-3-7(1) (Rev. 2006) (emphasis added). However, according to Mississippi Code Section 47-4-1(4):

> [a] person convicted of simple assault on *an employee*[4] *of a private correctional facility* while such employee is acting within the scope of his or her duty or employment shall be punished by a fine of not more than One Thousand Dollars ($1,000.00) *or by imprisonment for not more than five (5) years*, or both.

Miss. Code Ann. § 47-4-1(4) (Rev. 2004) (emphasis added).

¶11. According to Tillis, "the indictment allegation of [Hogue's] employment was the only allegation that rendered the crime charged a felony[,]" and no evidence was adduced at trial that Hogue was employed by Walnut Grove or any private correctional facility. As such, Tillis argues that "[t]his material variance between the proof and the accusation was fatal to [Tillis's] felony conviction, because an essential element of the indictment remained unproven." Therefore, Tillis asserts that "[d]ue process requires that the crime he was convicted of be reduced to misdemeanor simple assault, and he should be resentenced as a misdemeanant."

¶12. Conversely, the State maintains that Hogue, "as a person who works among the inmate population on a daily basis, providing necessary medical services to the inmates, is exactly the kind of worker the legislature intended to protect with [Mississippi Code Section

---

[4]The term "employee" is not statutorily defined in Title 47, Chapter 4. Miss. Code Ann. § 47-4-1(4) (Rev. 2004).

47-4-1]." According to the State, "[w]hile [Hogue's] paycheck came from Health Assurance, her place of employment was [Walnut Grove,]" and "[i]t would be an absurd result to say that [Hogue] is not protected by this statute based on a hyper-technical definition of employee."

¶13. The State has a constitutional obligation to provide medical care to prisoners, *see Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976), and the Legislature has statutorily mandated such medical care. *See* Miss. Code Ann. §§ 47-1-57, 47-1-59 (Rev. 2004). That duty did not depart when the Walnut Grove Correctional Authority contracted with Cornell Companies, Inc., to operate Walnut Grove. *See* Walnut Grove Correctional Authority Home Page, http://www.walnutgrove-ms.com/ca.htm (last accessed June 21, 2010). To the end of satisfying that duty, Cornell contracted with Health Assurance to provide employees like Hogue to perform medical services at Walnut Grove.

¶14. At Walnut Grove, Hogue exclusively conducted her work duties, providing medical care to inmates, and had her own office. When the incident occurred, Hogue was in the process of delivering medication to the inmates while escorted by Captain Lewis. Based upon the facts presented, this Court finds that Hogue was, at a minimum, a dual employee of both Walnut Grove, a private correctional facility, and Health Assurance.

¶15. Dual employment arises "when an employee is engaged in the service of two (2) employers in relation to the same act." *Ray v. Babcock & Wilcox Co., Inc.*, 388 So. 2d 166, 167 (Miss. 1980). *See also Northern Elec. Co. v. Phillips*, 660 So. 2d 1278, 1282 (Miss. 1995) ("[i]n Mississippi, one may be employed by more than one employer . . . ."); *Dependents of Roberts v. Holiday Parks, Inc.*, 260 So. 2d 476, 478 (Miss. 1972) ("[i]t is

7

well settled that a person may be a servant of two or more masters at one time as to one act."). Such dual employment may exist even if only one employer pays the employee. *See Biggart v. Texas Eastern Transmission Corp.*, 235 So. 2d 443, 444-45 (Miss. 1970) ("[t]he fact that only one of the employers paid Biggart (here River Construction Corporation) does not alter the fact that Biggart was in the service of Texas Eastern and Brown & Root, Inc., an employer-employee relationship between appellees and . . . Biggart based on the element of control present at the time."). Accordingly, the fact that Hogue's paycheck came from Health Assurance is not dispositive. Rather, given Hogue's exclusive service to Walnut Grove, this Court concludes that she was a dual employee of both Walnut Grove and Health Assurance.[5]

¶16.    As Hogue was a dual employee, this Court concludes that the circuit court did not err in finding that Hogue, "in this setting, and under these circumstances, would qualify as being a person who would fit the term of employee." Undoubtedly, "criminal statutes must be strictly construed in favor of the accused . . . ." *Lewis v. State*, 765 So. 2d 493, 499 (Miss.

---

[5]Alternatively, Hogue could be considered an "employee" of Walnut Grove pursuant to the "borrowed servant" doctrine. This Court has stated that:

> it is well settled in other states that a person in the employ of one person or company whose services are loaned by his employer to another company or person becomes, for the purpose of the work assigned to him, the servant of the latter company, that is to say, the company for whom the work is performed.

*Phillips*, 660 So. 2d at 1281 (quoting *Runnels v. Burdine*, 234 Miss. 272, 276-77, 106 So. 2d 49, 51 (1958)). This Court finds the "borrowed servant" doctrine applicable here, because Hogue was working exclusively at Walnut Grove, supplying the medical services which Walnut Grove was constitutionally required to provide its inmates.

8

2000). However, concluding that the term "employee" provided in Mississippi Code Section 47-4-1(4) includes dual employees does no damage to this principle. In fact, an interpretation which protects individuals performing constitutionally mandated services in the prisons of this state "best suits the legislature's true intent or meaning" in enacting the enhanced sentencing provisions of Mississippi Code Section 47-4-1(4). *Gilmer*, 955 So. 2d at 833.

¶17.    The motion for directed verdict challenges the sufficiency of the evidence, is reviewed *de novo*, and involves consideration of "whether the evidence is of such quality that reasonable and fairminded jurors in the exercise of fair and impartial judgment might reach different conclusions." *Id*. The motion for new trial challenges the weight of the evidence, is reviewed under an abuse-of-discretion standard, and involves consideration of whether "the verdict was contrary to the substantial weight of the evidence so that justice requires that a new trial be granted." *Id*. *See also Dilworth v. State*, 909 So. 2d 731, 737 (Miss. 2005). As this Court finds that Hogue was an "employee" of Walnut Grove, the sole issue in dispute here, we further conclude that the circuit court properly denied Tillis's motion for directed verdict, request for peremptory instruction, and motion for new trial. Accordingly, this issue is without merit.

CONCLUSION

¶18.    Based upon this analysis, this Court affirms Tillis's conviction and the attending sentence of five years in the custody of the MDOC imposed by the Circuit Court of Leake County.[6]

¶19.    **CONVICTION OF SIMPLE ASSAULT OF AN EMPLOYEE OF A PRIVATE CORRECTIONAL FACILITY AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SAID SENTENCE TO RUN CONSECUTIVE TO ANY SENTENCE TILLIS IS PRESENTLY SERVING.**

        **WALLER, C.J., CARLSON, P.J., LAMAR, CHANDLER AND PIERCE, JJ., CONCUR.  KITCHENS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, P.J., AND DICKINSON, J.**

        **KITCHENS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶20.    While it is conceivable that Nurse Hogue could be considered "an employee of a private correctional facility" as contemplated by Mississippi Code Section 47-4-1 (Rev. 2004), her employment status was a question for the jury.  Because the jury was peremptorily instructed that Hogue was an employee, the enhanced portion of the sentence – but not the conviction *in toto* – should be vacated.  To the extent that the majority holds otherwise, I respectfully dissent.

¶21.    We recently reiterated that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." ***Jureka Brown v. State***, 995 So.

---

[6]In light of this disposition, Tillis's separate petitions for writ of mandamus, filed April 30, 2010 and August 3, 2010, are denied.

2d 698, 703 (Miss. 2008) (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)).  In *Brown*, the defendant was convicted of selling crack cocaine, and his sentence was doubled because the sale allegedly had occurred within 1,500 feet of a church.  *Id.* at 701.  *See* Miss. Code Ann. § 41-29-142 (Rev. 2009) (providing enhanced penalties for controlled-substance crimes which occur within 1,500 feet of certain locales).  On appeal, we vacated the sentencing enhancement because the trial judge, not the jury, made the determination of whether the crime had taken place within the statutorily prescribed distance.  *Id.* at 705.  Although Brown's counsel failed to object at trial, we found the error was not subject to a procedural bar because "Brown enjoyed a Sixth Amendment right to have the issue of his sentence enhancement submitted to a jury." *Id.* at 704 (citing *Apprendi*, 530 U.S. 166).  Moreover, the error was not harmless, because there was evidence that the church was inactive; therefore, the evidence supporting an enhanced sentence was not "overwhelming." *Id.*

¶22.    Likewise, in the present case, because Section 47-4-1 increases the maximum penalty for simple assault if the victim is "an employee of a private correctional facility," the jury should have been tasked with deciding whether the victim was an "employee" and whether her employer was a "private correctional facility."  However, this decision was taken away from the jury because an instruction peremptorily described the nurse as an employee:

> The Court instructs the Jury that if you believe from the evidence in this case beyond a reasonable doubt that at the time and place charged in the indictment and testified about, that the Defendant Zenas Tillis, did willfully, unlawfully, feloniously, purposely and knowingly cause bodily injury to *Kathy Hogue, an employee of Walnut Grove Youth Correctional Facility, a private correctional facility,* by grabbing and twisting the hand and fingers of said Kathy Hogue, at a time when the said Kathy Hogue was acting within the scope of her

employment with the Walnut Grove Youth Correctional Facility, then it is your duty to find the Defendant guilty as charged.

(Emphasis added.) As this instruction is phrased, it improperly assumes facts in issue, specifically, whether Kathy Hogue was, at the time of the assault, an employee of Walnut Grove Correctional Facility, and whether that entity was a private correctional facility.

¶23. This instruction might have passed muster if it had gone on to make it clear to the jury that it was for them to decide whether the nurse was an employee of a private correctional facility at the time of the alleged offense. Alternatively, this could have been accomplished in a separate instruction, since it is well established in our state's jurisprudence that none of the instructions stands alone; all must be considered together by the jury. *See, e.g., Ford v. State*, 975 So. 2d 859, 863 (Miss. 2008) (quoting *Austin v. State,* 784 So. 2d 186, 192 (Miss. 2001)) ("[J]ury instructions are to be read together and taken as a whole with no one instruction taken out of context.").

¶24. As in *Brown*, because the issue of Hogue's employment status was hotly contested at trial, such an error cannot be harmless, and his failure to object at trial does not bar our review of the issue. *Brown*, 995 So. 2d at 704-05.

¶25. Under *Apprendi*, 530 U.S. 466, the Sixth Amendment to the United States Constitution requires that the jury, not the judge, make factual determinations necessary for enhancement of sentencing beyond the statutory maximum. *See also* Miss. Const. art. 3, § 26 (guaranteeing right to jury trial "in all prosecutions by indictment or information"). Because Tillis was denied his right to have a jury decide Hogue's employment status, a fact

that significantly increased the penalty, I would vacate the enhanced portion of his sentence

and remand the case for sentencing for simple assault.

**GRAVES, P.J., AND DICKINSON, J., JOIN THIS OPINION.**